|   |   |
|---|---|
| | THE HONORABLE TANA LIN |

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYRONE WASHINGTON, individually and on behalf of all those similarly situated, | Case No.: 2:25-cv-00965-TL |
| Plaintiff, | **PLAINTIFF'S MOTION TO REMAND** |
| v. | ORAL ARGUMENT REQUESTED |
| KERRY INC., a Delaware corporation; | NOTE ON MOTION CALENDAR: July 21, 2025 |
| Defendant. | |

MOTION TO REMAND, 2:25-cv-00965-TL
Page 1 of 19

JUSTICE LAW CORPORATION, 751 N. Fair Oaks Ave., Ste. 101, Pasadena, California, 91103. (818) 230-7259.

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 7

II. PROCEDURAL HISTORY .......................................................................................... 7

III. LEGAL ARGUMENT AND ANALYSIS .................................................................... 8

    A. Legal Standard for Motion to Remand for Lack of CAFA Jurisdiction ...................... 8

    B. Defendant Kerry's Evidence is Insufficient to Show $5M in Controversy ............... 11

        1. Defendant Kerry Fails to Provide Any Basis for its Amount in Controversy "Calculations" to Overcome CAFA's $5 Million Threshold .......................... 11

        2. Defendant Kerry Fails to Provide any Mathematical Accounting for its Amount in Controversy "Calculations." ....................................................................... 15

        3. Defendant's Amount in Controversy Calculations Incorporating Double and Treble Damages are Overestimated and Unsubstantiated ............................... 17

        4. Defendant Kerry's Amount in Controversy Improperly Includes Attorneys' Fees that Have Not Been Incurred ................................................................. 18

IV. CONCLUSION ............................................................................................................. 19

**TABLE OF AUTHORITIES**

**Cases**                                                   **Page(s)**

*Abrego v. Dow Chemical Company*
    443 F.3d 676 (9th Cir. 2006) .................................................................................. 8, 10

*Advanced Surgery Ctr. LLC v. State Farm Mut. Auto. Ins. Co.,*
    2024 U.S. Dist. LEXIS 164523 at *2 (E.D. Mich. Sept. 12, 2024) ................................ 16

*Androckitis v. Virginia Mason Med. Ctr.,*
    2014 32 Wn. App. 2d 418 ........................................................................................ 16, 17

*Arias v. Superior Court,*
    46 Cal.4th 969 (2009) ........................................................................................ 8, 9, 11

*Arreola v. The Finish Line,*
    No. 14-CV- 03339-LHK, 2014 WL 6982571 at *4 (N.D. Cal. Dec. 9, 2014) ................ 12

*Baretich v. Everett Fin., Inc.,*
    No. 18cv1327-MMA (BGS), 2018 U.S. Dist. LEXIS 164609, at *13
    (S.D. Cal. Sept. 25, 2018) .......................................................................................... 13

*Caterpillar Inc. v. Williams*
    482 U.S. 386 (1987) ................................................................................................... 12

*Coleman v. Estes Express Lines, Inc.,*
    730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ............................................................ 12

*Conn v. Wal-Mart Stores East, LP,*
    2021 U.S. Dist. LEXIS 230842 at *6 (E.D. Ky. Dec. 2, 2021.) .................................... 16

*Corral v. Select Portfolio Servicing, Inc.*
    878 F.3d 770 (9th Cir. 2017) ........................................................................................ 9

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
    2014 574 U.S. 81 ...................................................................................................... 8, 9

*Garibay v. Archstone Cmtys. LLC,*
    539 F. App'x 763 (9th Cir. 2013) ............................................................................... 13

| | **Cases** | **Page(s)** |

*Gaus v. Miles, Inc.,*
    980 F.2d 564 (9th Cir. 1992) ...............................................................................................8, 9

*Greene v. Harley-Davidson, Inc.,*
    965 F.3d 767 (9th Cir. 2020) ....................................................................................................8

*Guzman v. Rich Prods. Corp.,*
    2021 U.S. Dist. LEXIS 218112 at *6-7 (C.D. Cal. Nov. 9, 2021) .....................................16

*Ibarra v. Manheim Invs., Inc.,*
    775 F.3d 1193 (9th Cir. 2015) .......................................................................................... *passim*

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ...................................................................................................................8

*Libhart v. Santa Monica Dairy Co.,*
    592 F.2d 1062 (9th Cir. 1979) ..................................................................................................8

*Muniz v. Pilot Travel Ctrs. LLC,*
    2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr.30, 2007) ................................12

*Ray v. Nordstrom Inc.,*
    No. 2:11-cv-07277-JHN-CWx, 2011 U.S. Dist. LEXIS 146657, at *9
    (C.D. Cal. Dec. 9, 2011) ..........................................................................................................14

*Rinsch v. ServiceLink NLS, LLC,*
    No. CV 22-5989-GW-ASx, 2022 U.S. Dist. LEXIS 227343, at *23-*24
    (C.D. Cal. Dec. 16, 2022) ........................................................................................................14

*Roberts v. Shaffer,*
    2021 U.S. Dist. LEXIS 202792 at *4 (E.D. Cal. Oct. 19, 2021) ................................15, 16

*Ruby v. State Farm Gen. Ins. Co.,*
    No. C 10-02252 SI, 2010 U.S. Dist. LEXIS 88812, at *11-*12
    (N.D. Cal. Aug. 4, 2010) ..........................................................................................................14

| Cases | Page(s) |
|---|---|
| *Sanchez v. Monumental Life Ins. Co.* 102 F.3d 398 (9th Cir. 1996) | 11 |
| *Sanders v. Old Dominion Freight Line, Inc.,* No. 16-CV-2837-CAB-NLS, 2017 U.S. Dist. LEXIS 15936, at *11 (S.D. Cal. Feb. 2, 2017) | 13, 15 |
| *Standard Fire Ins. Co. v. Knowles,* 2013 568 U.S. 588 (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)) | 8 |
| *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir. 1997) | 9 |
| *Terrell v. Samuel, Son & Co. (USA)* No. EDCV20-00587-JGB- (KKx), 2020 U.S. Dist. LEXIS 94425, at *9 (C.D. Cal. May 29, 2020) | 14 |
| *Weston v. Helmerich & Payne Int'l Drilling Co.,* No. 1:13-cv-01092-LJO-JLT, 2013 U.S. Dist. LEXIS 132930, at *17 (E.D. Cal. Sept. 16, 2013) | 14 |

/ / /

/ / /

/ / /

| **Statutes** | **Page(s)** |
|---|---|
| Class Action Fairness Act | *passim* |
| Revised Code of Washington § 49.45.130 | 16 |
| Revised Code of Washington § 49.46.210 | 12 |
| Washington Administrative Code 296-128-550 | 16 |
| 28 U.S.C. § 1332(d) | 7 |
| 28 U.S.C. § 1332(d)(2) | 8 |
| 28 U.S.C. § 1332(d)(5)(B) | 8 |
| 28 U.S.C. § 1441 | 7 |
| 28 U.S.C. § 1441(a) | 8 |
| 28 U.S.C. §1446 | 7 |
| 28 U.S.C. §1446(a) | 8 |
| 28 U.S.C. §1453 | 7 |

## I. INTRODUCTION

The Class Action Fairness Act ("CAFA") permits a defendant to remove a class action suit from state court to federal court provided the proposed class has (1) more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy in the aggregate exceeds the sum or value of $5 million.

On May 21, 2025, Defendant Kerry, Inc. ("Defendant Kerry") improvidently filed a Notice of Removal pursuant to CAFA. Plaintiff brings his instant Motion for Remand because Defendant Kerry has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 for CAFA jurisdiction. This Court should therefore remand this case back to the King County Superior Court.

Defendant Kerry's forwarded assumptions are insufficient to prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold under CAFA. Indeed, Defendant Kerry's violation rates are arbitrary and unsubstantiated. As thoroughly discussed below, those variables self-servingly relied upon by Defendant Kerry omit the critical information necessary to plausibly determine the amount in controversy, ***despite Defendant Kerry being the party with superior access to information***. Defendant Kerry's assumptions also serve no purpose other than to artificially inflate the amount in controversy for jurisdictional purposes. Accordingly, this case should be remanded back to King County Superior Court.

## II. PROCEDURAL HISTORY

On April 14, 2025, Plaintiff, on behalf of himself and all others similarly situated, filed a class action lawsuit against Defendant Kerry ("Defendant") in the Superior Court of Washington, County of King, alleging nine (9) causes of action for Defendant's wage and hour violations. *See* Dkt. No. 1, Exh. 1-A ("Complaint"). On May 21, 2025, Defendant Kerry filed and served its Notice of Removal pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.S. §§ 1332(d), 1441, 1446, and 1453, but predicated on undue assumptions and speculation. *See* Dkt. No. 1 ("Removal").

## III. LEGAL ARGUMENT AND ANALYSIS

### A.   Legal Standard for Motion to Remand for Lack of CAFA Jurisdiction.

The CAFA vests district courts with "'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter of controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). The party seeking removal to federal court bears the burden of proving that removal is proper, including the burden of proving the amount in controversy exceeds $5,000,000. *Abrego v. Dow Chemical Co.,* 443 F.3d 676, 678 (9th Cir. 2006); *see Kokkonen v. Guardian Life Ins. Co. of Am.* 511 U.S. 375, 377 (1994) (stating that it is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citation omitted). Section 1441(a) of the United States Code provides as a basis for removal to federal court any action filed in state court that originally could have been filed in federal court. *See* 28 U.S.C.S. §1441(a). Removal statutes are strictly construed against removal jurisdiction in the Ninth Circuit. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal…" *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).)

A defendant seeking removal under CAFA shall file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C.S. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (requiring that the notice of removal include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). When the amount in controversy is not specified in the complaint, the party supporting removal has the burden to plausibly "persuade the court that the estimate of damages is a reasonable one." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (to meet CAFA's amount in controversy requirement, "a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million"). Evidence showing the

amount in controversy is required when the amount in controversy is in question. *Arias v. Residence Inn by International Paper*, 936 F.3d 920, 925 (9th Cir. 2019); *see also, e.g.*, *Dart Cherokee*, 574 U.S. at 89 (when the amount in controversy is in dispute, "[e]vidence establishing the amount is required"). Furthermore, CAFA requires the removing party to support its amount-in-controversy allegation with *real* evidence. *Id*. Conclusory allegations as to the amount in controversy are insufficient." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017) (quotation marks and citations omitted).

In attempting to satisfy their burden under CAFA jurisdiction, Defendants must offer nothing less than competent evidence. *Gaus,* 980 F.2d at 567. In order to demonstrate the requisite amount in controversy, Defendant may "submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997) (internal citations omitted). While the party seeking removal may rely on certain assumptions, these "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Arias*, 936 F.3d at 925; *see also Ibarra,* 775 F.3d at 1197 (A defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions"). Calculations based on unreasonable and unsupported assumptions cannot overcome the Ninth Circuit's strict construction of removal statutes against removal jurisdiction.

As shown below, the variables Defendant Kerry offers are wholly inadequate for this Court to determine whether Defendant Kerry satisfied its burden by a preponderance of the evidence. None of Defendant Kerry's violation rates are backed with any admissible evidence. As such, Defendant Kerry's violation rates and all other proffered numerical values are arbitrary and unreasonable, and thus, Defendant Kerry has failed to satisfy its burden to meet the amount in controversy as required for removal jurisdiction under CAFA.

Defendant essentially seeks to invoke the Court's formulation or a remand analysis from *Ibarra* without acknowledging the inherent differences in its unexplained methodology here and

the Defendant's methodology there. 775 F.3d 1193. In *Ibarra*, the Defendant submitted the following evidence:

> "Manheim relied on a declaration of its senior director of employee services and administration, which had a table listing all of its non-exempt employees and their corresponding number of shifts worked in excess of 5 hours and 3.5 hours during the relevant class period. Per this table, Manheim employed about 1,900 non-exempt employees in California from January 1, 2008, to December 31, 2012, and these employees worked 476,865 shifts of more than 5 hours and 553,027 shifts of more than 3.5 hours during this period. The average hourly wage of these employees was $11.66. Assuming that each class member missed one meal break in a 5-hour shift and that each class member missed one rest break in a 3.5-hour shift, Manheim estimated the amount of meal period penalties at issue to be $5,560,246 ($11.66 x 476,865 shifts) and the amount of rest break penalties at issue to be $6,448,295 ($11.66 x 553,027 shifts).
>
> Manheim's method of calculation assumed that Manheim denied each class member one meal break in each of their 476,865 5-hour shifts and one rest break in each of their 553,027 3.5-hour shifts. Manheim based its violation-rate assumption on the allegations in the complaint that Manheim has a 'pattern and practice of failing to pay their Non-Exempt employees for working off-the-clock,' and that Manheim 'hide[s] behind written policies that purport to forbid these unlawful labor practices while at the same time maintaining an institutionalized unwritten policy that mandates these unlawful practices.'"

*Id.* at 1198. And in *Ibarra*, the Ninth Circuit ruled that *not even that* level of testimony with supporting documentation was sufficient to preclude a hearing on a motion to remand to resolve the contested jurisdictional dispute. *Id.* at 1200 (vacating denial of motion to remand and remanding to lower court for further proceedings). It necessarily follows that if the removing Defendant in *Ibarra* could not prove subject matter jurisdiction based on *more* proffered evidence, then it would not be possible for Defendant Kerry here to succeed in proving subject matter jurisdiction by offering less.

"Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego*, 443 F.3d at 683. Here, Plaintiff's Complaint does not specify the amount of damages sought, however the Complaint does state that Defendant "engaged in a common course" of committing wage and hour violations; implying a regular frequency rate of

violations but below a one hundred percent (100%) violation rate. *See generally*, Complaint §§ 1.1–14.8; Complaint. §§ 5.1–5.35. Under the preponderance of the evidence standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez,* 102 F.3d at 404. Regarding violation rates, if Defendant Kerry makes assumptions, it bears the burden of providing "some reasonable ground underlying them." *Arias*, 936 F.3d at 927 (internal quotations and citations omitted).

### B.     Defendant Kerry's Evidence is Insufficient to Show $5M in Controversy.

The Ninth Circuit has held that "CAFA's [amount in controversy] requirements are to be tested by consideration of (1) real evidence and (2) the reality of what is at stake in the litigation, using (3) reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Without such evidence there can be no plausible allegation that the amount exceeds the jurisdictional threshold because the assumptions underlying the damage calculations are unsupported. *See Id.* at 1199 (recognizing that a "damages assessment may require a chain of reasoning that includes assumptions[,] [but] those assumptions cannot be pulled from thin air but needs some reasonable ground underlying them").

#### 1.   Defendant Kerry Fails to Provide Any Basis for Its Amount in Controversy "Calculations" to Overcome CAFA's $5 Million Threshold.

Defendant Kerry's amount in controversy "calculations" are inadequate to support removal based on CAFA and fail to provide actual calculations for each alleged category of violation. In its Removal papers, Defendant Kerry determines that there are approximately 194 putative class members who worked throughout Washington during the relevant time period. Removal ¶ 14. However, Defendant Kerry fails to provide any estimate on the number of workweeks worked by these putative class members, and instead relies on an unsupported statement that Defendant employed "an average of 96.15 hourly or non-exempt employees" including "an average of 75.05 hourly or non-exempt employees in Seattle," who worked "an average of 44.29 hours per week" at "an average rate of $25.78 per hour" during the relevant time period. Removal ¶ 31. Defendant Kerry then alleges that "the total amount of unpaid wages

1  between 2022 and 2024 at an average regular rate of pay would be $1,583.356.04" and
2  "[m]ultiplying by 1.5 to account for an alleged overtime rate of pay would be $2,375,034.06."
3  Removal ¶ 37. Although Defendant Kerry confidently asserts these numbers as the applicable
4  unpaid wages, these "totals" are simply not supported by any semblance of evidence, nor even a
5  simple calculation showing *how* Defendant came upon them.

6  Instead, Defendant asserts that *every* putative class member was subject to a 100%
7  violation rate for *every* shift and *every* workweek throughout the entire class period. Removal ¶¶
8  29, 33; *see also*, RCW § 49.46.210. However, it makes no sense to assume that *every* putative
9  class member failed to receive: (1) every meal period; (2) every rest period; (3) every hour of
10 accrued sick leave; and (4) every hour of overtime pay, and such assumptions are inherently
11 unreasonable. Defendant offers no actual evidence to back up the notion that its violation rates
12 were one hundred percent (100%) but, instead, solely makes such an assumption by attempting
13 to draw parallels to other, inapposite cases in which the plaintiffs did not provide any allegations
14 to merit an assumption below one hundred percent (100%). *See*, Removal ¶ 29 (quoting *Muniz v.*
15 *Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr.30, 2007) (citing
16 *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Arreola v. The Finish Line*, No. 14-CV-
17 03339-LHK, 2014 WL 6982571 at *4 (N.D. Cal. Dec. 9, 2014); *Coleman v. Estes Express Lines,*
18 *Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010). However, unlike in these cases, Plaintiff does
19 not state that Defendant Kerry failed to provide *any* meal or rest periods, hours of accrued sick
20 leave, or overtime pay in his Complaint—nor is he silent as to the nature of the violations—but
21 instead asserts that Defendant Kerry engaged in a "common course" of committing the alleged
22 violations. *See generally,* Complaint. §§ 5.1–5.35. By definition, the term "common" in this
23 context does not signify that an event occurs at all times or every time, but instead means
24 "occurring or appearing frequently."[1] *See*, "Common," definition 3(a), *Merriam-Webster.com*

---

[1] In this context, the term "course" refers to a "way of acting." *See*, "Course," definition 3(b), *Merriam-Webster.com Dictionary*, Merriam-Webster (June 16, 2025), https://www.merriam-webster.com/dictionary/course (accessed June 17, 2025).

*Dictionary*, Merriam-Webster (June 15, 2025), https://www.merriam-webster.com/dictionary/common (accessed June 17, 2025). Defendant Kerry bears the burden to show that application of a one hundred percent (100%) violation rate across all putative class members and across all hours worked is based on reasonable assumptions (*Ibarra*, 775 F.3d at 1199), but Defendant Kerry offers no evidence in this regard. Indeed, despite possessing all of the data necessary to verify this alleged violation rate, Defendant Kerry cannot proffer evidence to substantiate its contention because that data would simply show that a substantial portion, if not a majority, of meal and rest periods, accrued sick pay, and overtime pay was provided. As Defendant Kerry's proffered evidence does not support a violation rate of one hundred percent (100%) of all putative class members across all hours worked during the putative class period, there is no reasonable basis for Defendant's estimate. *See Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837-CAB-NLS, 2017 U.S. Dist. LEXIS 15936, at *11 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate [or virtually any violation rate for that matter] is completely arbitrary and little more than speculation and conjecture"). As in *Sanders*, there is no basis for assuming a 100% violation rate and, thus, the Court should likewise reject those proffered by Defendant Kerry here.

As stated in *Baretich v. Everett Fin., Inc.*, "the Court may not simply ignore the Ninth Circuit's directive that it should not rely [on] 'an assumption about the rate of [defendants'] alleged labor law violations that [is] not grounded in real evidence.'" No. 18cv1327-MMA (BGS), 2018 U.S. Dist. LEXIS 164609, at *13 (S.D. Cal. Sept. 25, 2018) (quoting *Ibarra*, 775 F.3d at 1199). *See also Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (rejecting defendant's proposed violation rate because it was unsupported by evidence); *Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW(MANx), 2014 U.S. Dist. LEXIS 95620, at *8 (C.D. Cal. Jul. 14, 2014) (rejecting defendant's proposed violation rate when defendant provided no evidence). Assuming violations occurred for *every* putative class member for *every* shift during *every* workweek is illogical given the "common course" language in the Complaint, and given

the amount in controversy determination is entirely fact-based and done on a case-by-case basis. *Terrell v. Samuel, Son & Co. (USA)* is instructive.

In *Terrell*, the employer provided evidence that the "employment records [] identif[ied] 382,269 shifts worked without a recorded meal period during the alleged class period" and multiplied that number by the average hourly rate for those shifts. No. EDCV20-00587-JGB-(KKx), 2020 U.S. Dist. LEXIS 94425, at *9 (C.D. Cal. May 29, 2020). On the other hand, assuming a meal and rest period violation for every workweek based on general allegations is not appropriate. *See Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 U.S. Dist. LEXIS 132930, at *17 (E.D. Cal. Sept. 16, 2013) (the "defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week…"); *Ray v. Nordstrom Inc.*, No. 2:11-cv-07277-JHN-CWx, 2011 U.S. Dist. LEXIS 146657, at *9 (C.D. Cal. Dec. 9, 2011) (rejecting the employer's assumption that each class member missed one meal and rest period per pay period); *Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 U.S. Dist. LEXIS 88812, at *11-*12 (N.D. Cal. Aug. 4, 2010) (holding that there was no basis to assume there was one missed meal and rest break per workweek when the complaint made general allegations regarding meal and rest period violations); *Rinsch v. ServiceLink NLS, LLC*, No. CV 22-5989-GW-ASx, 2022 U.S. Dist. LEXIS 227343, at *23-*24 (C.D. Cal. Dec. 16, 2022) ("even assuming each class member was denied a rest period and a meal period for every shift lasting the requisite length, it is still unclear how many of the total shifts in question were of the sufficient length to mandate the provision of meal and rest periods") (internal quotations and citation omitted).

This case is identical to *Weston, Ray, Ruby*, and *Rinsch*, and distinguishable from *Terrell*. Here, Defendant Kerry arbitrarily assumes that every putative class member missed every meal and rest period, and was not paid any overtime pay or sick leave at all, every workweek instead of actually using the employee timecards and records at its disposal to support its bald assertions. *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-0474 AWI-BAM, 2014 U.S. Dist. LEXIS 18024, at *17 (E.D. Cal. Feb. 12, 2014) ("there are methods of determining a reasoned

basis for calculations such as a random sampling and using actual numbers instead of mere assumptions"). There is nothing reasonable about an assumed violation rate that has no basis in the Complaint nor in Defendant's nonexistent evidence. *See Sanders v. Old Dominion Freight Line, Inc.*, 2017 U.S. Dist. LEXIS 15936, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture").

Failing to provide compliant meal and rest periods, overtime pay, and accrued sick pay as a "common course," or even as a uniform policy, could easily be twice-per-month or even three-times-per-year. *See Marshall v. G2 Secure Staff, LLC,* 2014 U.S. Dist. LEXIS 95620 at *7-8 (C.D. Cal. July 13, 2014) ("The Court finds a similar void in G2's Notice of Removal, Opposition, and Declarations. G2 assumes a once per week violation rate for meal and rest period violations, arguing that its assumption is conservative and therefore justified. However, without evidence supporting the conclusion that once per week is suitable for calculation purposes, it is still an assumption, seemingly plucked from thin air"). Because Plaintiff's Complaint does not allege that Defendant Kerry violated Washington wage and hour laws *every* working hour of *every* working day, and because Defendant Kerry does not provide any evidentiary support for its chosen violation rate, Defendant's subsequent unpaid wages calculation must be rejected in its entirety.

   2. Defendant Kerry Fails to Provide Any Mathematical Accounting for its Amount in Controversy "Calculations."

Defendant Kerry's amount in controversy calculations for all of Plaintiff's claims are entirely speculative and arbitrary as Defendant fails to provide any accounting whatsoever for how it reached its numbers. As discussed above, instead of providing any actual reasoning for its calculations, Defendant Kerry arbitrarily decides to assume a one hundred percent (100%) violation rate for all of Plaintiff's claims. However, Defendant thereafter fails to specifically account for the value of *any* of Plaintiff's claims, or even to show the basic math it used to settle determine that "the total amount of unpaid wages between 2022 and 2024 at the average regular rate of pay would be $1,583,036.04"; and derivative numbers based thereupon. Removal ¶ 39;

*see e.g.*, *Roberts v. Shaffer*, 2021 U.S. Dist. LEXIS 202792 at *4 (E.D. Cal. Oct. 19, 2021) (holding that where party seeking removal offered no calculations regarding the amount in controversy, it had failed to demonstrate the jurisdictional threshold for removal was exceeded); *Guzman v. Rich Prods. Corp.*, 2021 U.S. Dist. LEXIS 218112 at *6-7 (C.D. Cal. Nov. 9, 2021) (holding where defendant offered no calculations to support its determination of damages sought in removal application, "[c]onclusory allegations as to the amount in controversy are insufficient") (quoting *Matheson v. Progressive Specialty Ins. Co.*, (9th Cir. 2003) 319 F.3d 1089, 1090-91); *Advanced Surgery Ctr. LLC v. State Farm Mut. Auto. Ins. Co.*, 2024 U.S. Dist. LEXIS 164523 at *2 (E.D. Mich. Sept. 12, 2024); *Conn v. Wal-Mart Stores East, LP*, 2021 U.S. Dist. LEXIS 230842 at *6 (E.D. Ky. Dec. 2, 2021.) Instead, Defendant Kerry throws out an arbitrary "catch-all" number without any mathematical basis therefor and expects the Court to take its word that this $1,583,356.04 amount means anything beyond just being a total that, when extrapolated upon with compounding baseless assumptions of a 100% applicable overtime violation rate and double and treble damages, conveniently totals above the $5 million threshold for CAFA.

Further displaying the senselessness of Defendant Kerry's amount in controversy accounting, Defendant arbitrarily decides to incorporate Plaintiff's overtime violation claims by just multiplying its already arbitrary calculation of $1,583,356.04 in unpaid wages by 1.5 to come to a total including unpaid overtime of $2,375,034.06—as if *every* putative class member would be entitled to meal and rest period premiums and unpaid wages for *every* shift throughout the *entire* class period at their overtime rate of pay. *See*, Removal ¶ 37. Once again, Defendant Kerry does not provide any evidentiary basis at all for this assumption, because there is no cognizable theory of recovery that would merit such an assumption. Indeed, under Washington law, meal and rest period premiums for missed, late or short breaks are to be compensated at the employee's regular rate of pay. *See*, *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418, 444; *see also,* WAC 296-128-550. However, overtime pay is to be paid at one and one-half times the employee's regular rate of pay. RCW § 49.45.130; *see also*, WAC 296-128-550. As such, Defendant Kerry's amount in controversy calculation contains a paradox—an assertion that the

putative class members are owed meal and rest period premiums (which are to be calculated at their regular rate of pay under *Androckitis*) at one and one-half times their regular rate of pay. To say that putative class members can possibly be compensated for unpaid meal and rest periods at the regular rate and one and one-half times the regular rate *simultaneously* is obviously patently ridiculous, but this is the logical stretch that Defendant Kerry asks the Court to make in order to accept its amount in controversy calculation.

Instead of actually making a concerted effort to genuinely calculate its potential damage exposure—and despite possessing all of the data, including time and pay data, necessary to make a substantiated estimate of the potential unpaid wage and overtime damages the putative class members are owed—Defendant Kerry has just asserted an entirely arbitrary, fabricated amount for unpaid wages without showing its work, and then multiplied that number by 1.5 to "account" for Plaintiff's overtime violation claim. Defendant Kerry fails to elucidate its process for determining its amount in controversy for unpaid wages, and fails to provide any basis—evidentiary or legal—for its assessment of all unpaid wage damages at the class members' overtime rate; a Herculean task as such an undertaking is inherently paradoxical. In sum, none of Defendant Kerry's "calculations" make sense and the Court should disregard them entirely.

3. <u>Defendant's Amount in Controversy Calculations Incorporating Double and Treble Damages Are Overestimated and Unsubstantiated.</u>

In its Removal papers, Defendant Kerry amplifies its already-inflated amount in controversy calculation by doubling the total amount according to Plaintiff's request for double damages; and trebling the overtime damages attributable to the Seattle subclass. *See* Removal ¶¶ 33, 37. Thus, Defendant Kerry asserts that the amount in controversy totals $4,750,068.12 via doubling and before attorneys' fees, and/or $5,566,486.08 via trebling the alleged overtime damages for the Seattle subclass before attorneys' fees. *See* Removal ¶ 37. However, because the amounts in controversy asserted by Defendant Kerry for paid sick leave, meal and rest breaks, unpaid wages and overtime are greatly overestimated as previously discussed, and entirely unsubstantiated by any evidence, the amount in controversy for the double and treble damage

claims are likewise substantially exaggerated. Moreover, it is unclear where or how Defendant determined that the trebled overtime damages for the Seattle subclass equals $816,417.96—the difference between $5,566,486.08 and $4,750,068.12—because, once again, Defendant has refused to provide any mathematical basis on which it determined its amount in controversy. This problem is further compounded by the fact that Defendant already "accounted" for unpaid overtime wages by—paradoxically, as explained above—multiplying the entire unpaid wages amount by 1.5. *Id*. Since Defendant Kerry has not provided any kind of explanation for its calculations, it is unclear whether it has redundantly duplicated the unpaid overtime for the Seattle subclass by trebling some unknown amount after already claiming that it incorporated the unpaid overtime wages, or if it went back and accounted for the duplication. Without any explanation for how it reached its numbers, Defendant Kerry's amount in controversy "calculation" is incomprehensible and cannot possibly be considered a valid measure that overcomes the preponderance of the evidence standard necessary to merit removal based on CAFA.

Defendant Kerry cannot be allowed to simply pull an unpaid damages number out of thin air without providing any mathematical basis for such a calculation—and without designating which amounts are attributable to which claims—nonsensically multiply that number by 1.5 to "compensate" for overtime pay, and then double and triple those amounts to magically end up above the $5 million threshold. As such, the Court should disregard Defendant's amount in controversy calculations in their entirety.

    4. <u>Defendant Kerry's Amount in Controversy Improperly Includes Attorneys' Fees That Have Not Been Incurred.</u>

Defendant Kerry asserts that the Court should consider, and include, in the amount in controversy, attorneys' fees of $1,187,517.03 or 25% of the doubled amount in controversy for Plaintiff's unpaid sick time, meal and rest period, and overtime claims, and/or attorneys' fees of $1,391,621.52 when including treble overtime damages for the Seattle subclass. *Id*. Indeed, where the underlying law provides for the payment of attorneys' fees, the amount of fees is reasonably included in calculating the amount in controversy for CAFA jurisdiction. However, as explained

above, Defendant Kerry has not proven by a preponderance of the evidence *any* requisite amount in controversy figure regarding Plaintiff's claims. Therefore, the derivative attorneys' fees figures are themselves speculative.

As Defendant Kerry's derivative attorneys' fees estimations are unsubstantiated and inflated, the Court should strike them from the amount in controversy calculations.

## IV.  CONCLUSION

As Defendant Kerry's amount in controversy figures are entirely baseless and depend solely on unsupported assumptions, Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00 under CAFA. Accordingly, this case must be remanded back to the King County Superior Court.

I certify that this memorandum contains 4,573 words, in compliance with the Local Civil Rules.

DATED: June 20, 2025                    **JUSTICE LAW CORPORATION**

                                                     By: */s/ Dean Petitta*
Douglas Han, WSBA #59429
Email: dhan@justicelawcorp.com
Shunt Tatavos-Gharajeh, WSBA #59424
Email: statavos@justicelawcorp.com
Dean Petitta, WSBA #58295
Email: dpetitta@justicelawcorp.com
751 North Fair Oaks Avenue, Suite 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that, on the date stated below, I did the following:

On June 20, 2025, I transmitted a true copy of:

**PLAINTIFF'S MOTION TO REMAND**

in the above-entitled matter to:

| | |
|---|---|
| Peter V. Montine, WSBA #49815<br>Peter.Montine@jacksonlewis.com<br>Brian K. Keeley, WSBA #32121<br>Brian.Keeley@jacksonlewis.com<br>**Legal Staff:**<br>Ross Merritt<br>Ross.Merritt@jacksonlewis.com<br>Lindsay Holzworth<br>Lindsay.Holzworth@jacksonlewis.com<br>Sage Emerson<br>Sage.Emerson@jacksonlewis.com<br>SeattleDocket@jacksonlewis.com<br>**JACKSON LEWIS P.C.**<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | **[X] By ECF**<br>**[X] By Electronic Mail** |

*Attorney(s)* for Defendant *Kerry Inc*.

Executed on June 20, 2025, at Pasadena, California.

                                                          /s/ *Sophia Hanneyan*
                                                        Sophia Hanneyan

PLAINTIFF'S JURY DEMAND - 3
CASE NO.: 2:25-CV-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Suite 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.justicelawcorp.com