THE HONORABLE TANA LIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TYRONE WASHINGTON, individually and on behalf of all others similarly situated,

　　　　　　　　　　Plaintiff,

　　　v.

KERRY INC., a Delaware corporation,

　　　　　　　　　　Defendant.

No. 2:25-cv-00965-TL

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Noted for Hearing:　　July 21, 2025

Oral argument requested

## I.　INTRODUCTION AND RELIEF REQUESTED

Defendant Kerry Inc. ("Kerry") properly removed this wage and hour class action under the Class Action Fairness Act of 2005 ("CAFA"). Plaintiff Tyrone Washington ("Plaintiff") alleges that Kerry deprived him and a purported class of current and former employees of Kerry of meal and rest periods owed to them under Washington law as well as attendant allegations regarding paid sick leave, overtime, and unlawful deductions. Based on Kerry's reasonable estimates of the number of employees implicated by Plaintiff's allegations and the number of potential missed meal and rest periods at issue, Kerry demonstrated in its Notice of Removal that this case satisfies CAFA's $5,000,000 amount-in-controversy requirement based on just some of the claims and alleged damages. Plaintiff disputes that Kerry has met the amount in controversy and asks this Court to remand this case to state court.

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1  Plaintiff argues that Kerry failed to present detailed evidence to establish the amount in

2  controversy. Plaintiff also argues that Kerry failed to fully explain its calculations in its Notice of

3  Removal. Plaintiff's arguments would demand more of Kerry in its Notice of Removal than

4  required. With this response, Kerry provides additional evidence and a more detailed explanation

5  to make it clear that CAFA's amount-in-controversy requirement has been met. Plaintiff also

6  argues that Kerry cannot assume a 100% violation rate to support its calculations. But Plaintiff's

7  own allegations support (or at least do not refute) this assumption; moreover, a sample of

8  Plaintiff's time records are consistent with and support Kerry's assumption. Therefore, the Court

9  should deny Plaintiff's Motion for Remand and retain jurisdiction over this case.

## II.    STATEMENT OF FACTS AND PROCEDURE

### A.    Plaintiff filed a class action alleging a "systematic scheme" and "common course" of wage and hour violations.

On April 14, 2025, Plaintiff filed a Class Action Complaint for Unpaid Wages (the

"Complaint") in King County Superior Court. Dkt. No. 1-2, p.2. In the Complaint, Plaintiff

alleged:

> Defendant has engaged in a <u>systematic scheme</u> of wage and hour abuses against its Washington hourly-paid or non-exempt employees. These abuses include: (1) failing to provide employees with the rest breaks to which they are entitled; (2) failing to provide employees with the meal breaks to which they are entitled; (3) failing to pay all minimum wages to employees for all hours worked; (4) failing to pay all overtime wages to employees when they work more than 40 hours in a workweek; and (5) failing to accrue sick leave for and failing to allow the usage of paid sick leave for qualifying absences by employees; and (6) making unlawful deductions and rebates from employees' wages. Defendant's deliberate and willful failure to pay their employees their earned wages violates Washington law.

*Id.* at 3 (emphasis added). Plaintiff further alleged that the amount in controversy for the named

Plaintiff alone was "less than seventy-five thousand dollars ($75,000)." *Id.*, p.4.

Plaintiff defined the purported class as "<u>All</u> hourly-paid or non-exempt employees of

Defendant in the State of Washington at any time during the period from three years preceding

the filing of this Complaint to final disposition of this action." *Id.* (emphasis added). Plaintiff

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 2
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1   further defined a Seattle subclass as "<u>All</u> hourly-paid or non-exempt employees of Defendant in

2   the State of Washington who worked in the City of Seattle at any time during the period from

3   three years preceding the filing of this Complaint to final disposition of this action." *Id.*

4   (emphasis added).

5        Plaintiff alleged that Kerry engaged in a "common course" of violating numerous

6   Washington wage and hour laws. *Id.*, pp.5–12 (repeatedly using phrase "common course").

7   Plaintiff left open the frequency of these alleged violations. The only possible narrowing is

8   confusing parenthetical language repeatedly used in Plaintiff's nine claims for relief. In each

9   claim, Plaintiff alleges, "As a result of the unlawful acts of Defendant, Plaintiff, and the Class

10  and Seattle subclass members (<u>but not all</u>) have been deprived of compensation in amounts to be

11  determined at trial …." *Id.*, pp.13–19. (emphasis added) Based on the structure of these

12  sentences, the phrase "(but not all)" modifies the number of class members, although it is unclear

13  how; it does not modify or shed light on the frequency of alleged violations in the alleged

14  "common course" and "systemic scheme."

15      **B.    Kerry removed this case under CAFA.**

16       On May 21, 2025, Kerry timely removed this case to this Court based on the Class Action

17  Fairness Act of 2005 ("CAFA"). Dkt. No. 1. Kerry removed this case under CAFA because,

18  based on the allegations in the Complaint, this class action involves more than 100 members,

19  minimal diversity exists between Plaintiff and Kerry, and the amount in controversy exceeds

20  $5,000,000. *Id.* p.4.

21       Based on Kerry's employment records, Kerry employed approximately 194 hourly or

22  non-exempt employees in the State of Washington from 2022 to 2024. *Id.*, p.5; Dkt. No. 3, ¶3).

23  Of these employees, approximately 181 worked in the City of Seattle. *Id.* Thus, this case satisfies

24  the numerosity under CAFA. Plaintiff affirmatively alleged he is a resident of Washington. Dkt.

25  No. 1-2, ¶ 3.1. Kerry is a citizen of Delaware and Wisconsin. Dkt. No. 1 at 5–7 (citing Dkt.

26  No. 4, ¶ 5). Thus, this case satisfies minimal diversity under CAFA. Plaintiff takes no issue with

27  these.

28

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 3
(Case No. 2:25-cv-00965-TL)

1   With its Notice of Removal, Kerry provided substantial case law, facts, and calculations

2   to support finding that the amount in controversy was $5,000,000, and incorporates those here in

3   opposition to the motion to remand. Dkt. No. 1, pp.7-13. These calculations were based on

4   (1) the average number of purported class members employed from 2022 through 2024, (2) the

5   average weekly hours worked by those purported class members; and (3) the average rate of pay

6   for those purported class members. Dkt. No. 1, p.10; Dkt. No. 3, ¶3. These calculations were

7   based only on a portion of the claims in the complaint, specifically allegations of denial of meal

8   periods, rest breaks, and failure to accrue paid sick leave on alleged denial of those.  These

9   calculations were based on the assumption that the purported class members did not receive fully

10  compliant meal periods or rest breaks during the class period, and the accompanying overtime

11  and sick leave that would accompany damages for success on such claims. *Id.*, pp. 10-12,

12  specifically ¶¶31, 33, 37. Those assumptions were reasonable and did not conflict with any

13  allegations in Plaintiff's Complaint, *see* Dkt. Nos. 1, 2.

14      **C.      Plaintiff moved for remand.**

15      In his Motion for Remand (Dkt. No. 12), Plaintiff argues that Kerry failed to prove by a

16  preponderance of the evidence that the amount in controversy exceeds $5,000,000. *Id.* at 7.

17  Plaintiff argues that "it makes no sense to assume that *every* putative class member failed to

18  receive: (1) every meal period; (2) every rest period; (3) every hour of accrued sick leave; and

19  (4) every hour of overtime pay, and such assumptions are inherently unreasonable." *Id.* at 12.

20  Plaintiff argues that the word "common," in the context of "common course," means "occurring

21  or appearing frequently." *Id.* Of course, Plaintiff offers no guidance on what he meant by

22  "common."

23      Plaintiff argues that Kerry failed to "show the basic math" used to calculate the amount in

24  controversy. *Id.*, p.11. Plaintiff also accuses Kerry of pulling numbers "out of thin air." *Id.*, p.18.

25  Plaintiff apparently disregarded the calculations described in detail in Kerry's Notice of Removal

26  that were based on data and numbers in the declaration filed in support of the Notice of Removal

27  and explained in the Notice of Removal. Dkt. No. 1, pp.10–13, including ¶37; Dkt. No. 3.

28

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 4
(Case No. 2:25-cv-00965-TL)

Plaintiff also argues that the amount of attorney's fees is speculative and therefore should be excluded from the calculations while also acknowledging that fees can be included in amount in controversy. *Id.* at 18–19.

### III.    ARGUMENT

**A.    Standards on Motion to Remand a Removed Case**

In a notice of removal, a defendant "need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).[1] If the plaintiff challenges the removal, a defendant may then provide "summary-judgment type evidence" (i.e. declarations or exhibits) to meet its burden of supporting removal by a preponderance of the evidence. *Id.* Kerry does that here, providing a sample of Plaintiff's time records to supplement the evidence Kerry already submitted in declarations with its Notice of Removal. *See Declaration of Brian Paden in Support of Defendant's Opposition to Plaintiff's Motion to Remand* ("Paden Dec.") and Ex. A thereto.

In establishing the amount in controversy, a defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198; *LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1201-02 (9th Cir. 2015, the companion case to *Ibarra*) (defendants may rely on a "reasonable chain of logic" including reasonable assumptions). In doing so, "a defendant removing a case is 'not required to comb through the records to identify and calculate the exact frequency of [alleged] violations.'" *Terrell v. Samuel, Son & Co. (USA)*, No. EDCV20-00587-JGB-(KKx), 2020 U.S. Dist. LEXIS 94425 at *10–11 (C.D. Cal. May 29, 2020) (quoting *Salcido v. Evolution Fresh, Inc.*, 2016 U.S. Dist. LEXIS 1375, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016)). "To expect [a defendant] to do more at this stage is to expect it to prove [the plaintiff's] case simply to justify removal." *Id.* at *10. Here,

---

[1] Plaintiff suggests Kerry's removal fails because Kerry failed to satisfy a burden, failed to offer "admissible evidence," and "offers no actual evidence" in support of its notice of removal. Dkt. No. 12 at pp. 9, 12. This misstates Kerry's burden at removal. Plaintiff conflates Kerry's burden at the notice-of-removal stage with Kerry's burden once, and only if, Plaintiff challenges the basis for removal, as he has done here. Kerry meets that burden here with the evidence submitted with its Notice of Removal and with the additional evidence supporting this opposition.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 5
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Kerry is not required to prove Plaintiff's allegations in order to satisfy CAFA; it need only demonstrate that its interpretation of the damage Plaintiff seeks is plausible in light of the allegations in the complaint. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (finding defendant's violation rate assumptions "plausible" and noting they "may prove reasonable in light of the allegations in the complaint.").

The Ninth Circuit has also explained that a defendant's assumptions "will always be just that: assumptions." *Jauregui v. Roadrunner Transp. Servs. Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). Because of that, and because at removal disputes over key facts have not been resolved, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Id.*, quoting *Valdez v. Allstate Ins. Co.* 372 F.3d 1114, 1117 (9th Cir. 2004).

One court explained and summarized the framework under which the Court assesses removal under CAFA in this way:

> [W]hen a case is removed under CAFA, "no antiremoval presumption" applies. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("Congress intended CAFA to be interpreted expansively" in favor of removal of certain class actions) (internal citation omitted). A defendant's notice of removal "need include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and does not need evidentiary submissions. *Sharpe v. Puritan's Pride, Inc.*, Case No. 16-cv-06717-JD, 2017 U.S. Dist. LEXIS 16531, 2017 WL 475662 at *2 (N.D. Cal. Feb. 6, 2017) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal citation omitted)).
>
> …
>
> "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). The defendant carries its burden of establishing the amount in controversy by presenting evidence that "plausibly" explains "how the stakes exceed $5 million." *Lewis*, 627 F.3d at 400–01. The defendant "need not make the plaintiff's case for it," or prove the amount in controversy to a certainty. *Harris*, 980 F.3d at 701; *see also Lewis*, 627 F.3d at 401. The Court also need not perform detailed

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 6
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

mathematical calculations to determine whether the defendant has established the jurisdictional amount. *Harris*, 980 F.3d at 701. Rather, "a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold," *id.*, and on a "chain of reasoning that includes assumptions" based on reasonable grounds, *Ibarra*, 775 F.3d at 1199. Reasonable grounds include the allegations in the complaint, as well as extrinsic evidence proffered by the defendant. *Arias*, 936 F.3d at 925. "[P]rospective attorneys' fees must be included in the assessment of the amount in controversy." *Id.* at 922.

*Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136–37 (N.D. Cal. 2020) (denying motion for remand).

### B.     It Is Reasonable to Assume a 100% Violation Rate for Breaks.

If a plaintiff asserts statutory violations, courts may assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12–13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

Allegations of a "policy and practice" throughout a complaint without more may support an assumption of 100 percent violation rate. For example, the court in *Bryant v. NCR Corp.* evaluated a complaint with remarkably similar language than here: the plaintiff alleged the

1    defendant had a "policy and practice" of failing to provide meal periods and rest breaks and

2    requiring employees to work through them. 284 F.Supp.3d 1147, 1151 (S.D.Cal. 2018). The

3    Court explained that, even though a defendant assumed only a 60 percent violation rate,

4    "assumption of a 100 percent violation rate may have been reasonable based on allegations in the

5    Complaint." *Id.* Likewise, this Court has acknowledged that when a complaint alleges a

6    "widespread or systematic pattern of violations" (as Plaintiff does here), a 60% or even 100%

7    violation rate might be appropriate, though lower rates could be assumed when allegations were

8    more equivocal using language such as "at times" (which Plaintiff does not do here). *Young v.*

9    *Lab Corp.*, 2024 U.S. Dist. LEXIS 28879 at *9-*12, 3:23-cv-05892-DGE (W.D. Wash. Feb. 20,

10   2024) (citing *Alvarez v. Office Depot, Inc.*, Case No. CV 177220 PSG, 2017 WL 5952181, at *3

11   (C.D. Cal. Nov. 30, 2017). Here, Plaintiff acknowledges that the use of "common course" means

12   "frequently," which certainly suggests something more than "at times." Dkt. No. 12, p.12.

13       Kerry submits with this response a sample of records of Plaintiff's recorded or reported

14   hours worked from Kerry's time records. Paden Dec., Ex. A. The sample is from March 2024.

15   The records indicate when Plaintiff clocked in at the beginning of a shift (typically around 10:00

16   PM), when Plaintiff clocked out for a meal break, when Plaintiff clocked back in returning from

17   a meal break, and when Plaintiff clocked out at the end of the shift (typically around 11:00 AM).

18   Kerry offers the following observations based on these records:

19       - Plaintiff did not clock in or out for rest periods. Kerry is thus unable to determine if

20           Plaintiff claims he was denied fully compliant rest periods on one occasion, 25% of

21           his shifts, 75% of his shifts, or 100% of his shifts.

22       - Plaintiff worked 26 shifts during the month of March 2024. Plaintiff did not clock out

23           and in for a meal period for 7 of those shifts, each of which were more than 5 hours

24           and 1 of which was more than 10 hours (March 31-April 1). Of the 20 other shifts,

25           Plaintiff clocked out and in for a meal period but of those, Plaintiff was clocked out

26           for less than 30 minutes for 8 of them.

27

28

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 8
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Against this, Kerry evaluates what Plaintiff's complaint plausibly alleges. Under Washington law, a meal period or rest break that is late by one minute or short by one minute might not comply with Washington law. *See, e.g.*, *Pellino v. Brink's, Inc.*, 164 Wash. App. 668, 690, 267 P.3d 383 (2011) (holding that failure to provide employees with 30 minutes of total meal time while on duty does not comply with WAC 296-126-092). Thus, the meal breaks Plaintiff received that were 29 minutes, 28 minutes, or 27 minutes might be argued to not comply with Washington law, and meal breaks of 30 minutes or more Plaintiff received that did not begin until more than 5 hours after his shift began might be argued to not comply with Washington law. Similarly, based on the lack of clock data for Plaintiff's rest breaks, Plaintiff might argue that even if he received rest breaks, he received no breaks that fully complied with Washington law. Under these arguments, based on this sample month of Plaintiff's clock data, Plaintiff's arguments could support a claim for a 100% violation rate for meal breaks and rest breaks. And because Plaintiff seeks to represent a class, claiming that his claims are typical of the entire class he seeks to represent, these assumptions about Plaintiff may reasonably be extrapolated to the entire purported class.

Kerry, of course, does not concede or admit that Plaintiff was denied fully compliant breaks. Several factors not apparent from this data could affect that. Those include whether Plaintiff took rest breaks that his time records do not account for; whether Plaintiff took meal periods other those for which he clocked out and in and was paid for them; whether Plaintiff waived meal periods; and other factors. Nor does Kerry concede or admit that Plaintiff or his time are typical of the entire class he purports to represent. Ultimately liability will depend on such other evidence, and of course Plaintiff bears the burden of proving his claim and proving that he is an appropriate class representative. At this stage, however, based on this sampling of Plaintiff's time records, it appears that Plaintiff could argue that he received no fully compliant meal periods during this sample month and that his time records do not reflect rest breaks. Again, Kerry does not admit or concede this is the case, nor is it required to do so at this stage to invoke the Court's

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 9
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1    jurisdiction. But this data makes it clear that Kerry's presumption of 100% violation rate is a

2    reasonable one.

3        **C.    Kerry's calculations support CAFA removal.**

4        Kerry now provides a more detailed explanation of the calculations to support removal

5    under CAFA. To reiterate the notable numbers at issue:

6        • From 2022 to 2024, Defendant employed approximately 194 hourly or non-

7            exempt employees in Washington State, including 181 hourly or non-exempt

8            employees in Seattle.

9        • From 2022 through 2024, Defendant employed an average of 96.15 hourly or

10            non-exempt employees in Washington State, including an average of 75.05 hourly

11            or non-exempt employees in Seattle.

12        • From 2022 through 2024, the hourly or non-exempt employees in Washington

13            State worked an average of 44.29 hours per week, or 8.86 hours per day.

14        • From 2022 through 2024, the hourly or non-exempt employees in Washington

15            State were paid an average rate of $25.78 per hour.

16    Dkt. No. 3, ¶3. Based on these, Kerry offers the following calculations of potential claimed

17    damages. In doing so, again, Kerry does not agree, concede, or admit that Plaintiff or any other

18    putative class member is entitled to any of these damages. Instead, Kerry explains the potential

19    damages associated with Plaintiff's claims as pleaded in Plaintiff's complaint. All of these

20    damages assume a 100% violation rate, discussed above.

21    Alleged Unpaid Overtime for Hours Worked Over 40 in a Workweek:

22        Plaintiff alleges that Kerry "fail[ed] to pay all overtime wages to employees when they

23    work more than 40 hours in a workweek" (Dkt. No. 1-2, p.2, ¶1.1(4)); "fail[ed] to pay [class

24    members] all of the overtime wages to which they are entitled" (*Id.* p.4, ¶4.4(g)); and "fail[ed] to

25    pay [class members] for all hours worked over forth in a week at a rate of not less than one and

26    one-half times their regular rate of pay" (*Id.*, p.9, ¶5.19). Based on data Kerry submitted, workers

27    in Washington worked an average of 44.29 hours per week over the proposed class period, so

28

that Plaintiff claims workers were not paid overtime for 4.29 hours per week. With 96 workers

for an average week, an average hourly pay rate of $25.78, and an overtime premium Plaintiff

claims was not paid of .5 times the regular rate, the potential damages associated with this are:

| Avg. # of EEs (WA) | Avg. Hours over 40 Per Workweek (2022–2024) | Total Hours over 40 Per Workweek (96 x 52 Weeks x 3 Years x 4.29) | Avg. $/hr | Total Overtime (64,247 hours x 25.79/hr x .5) |
|---|---|---|---|---|
| 96 | 4.29 | 64,247.04 | $25.78 | $828,144.35 |

Alleged Failure to Accrue Paid Sick Leave:

Plaintiff alleges that Kerry "fail[ed] to accrue sick leave for and fail[ed] to allow the

usage of paid sick leave for qualifying absences by employees" (Dkt. No. 1-2, p.2, ¶1.1(5)); *Id.*,

p.5, ¶4.4(h); and "fail[ed] to accrue sick leave for and fail[ed] to allow the use of paid sick leave

for qualifying absences by [class members]" (*Id.* p.10, ¶5.26). Based on data Kerry submitted,

workers in Washington worked an average of 44.29 hours per week over the proposed class

period, and sick leave accrues at a rate of 1 hour per 40 hours worked. With 96 workers for an

average week and an average hourly pay rate of $25.78 that would be paid on the use of paid sick

leave, potential damages associated with this are:

| Avg. # of EEs (WA) | Avg. Hours Per Workweek (2022–2024) | # of Sick Leave Hours (96 x 44.29 hours x 52 Weeks x 3 Years x 1 hour sick for 40 worked) | Avg. $/hr | Total Sick Leave (64,247 hours x 25.79/hr) |
|---|---|---|---|---|
| 96 | 44.29 | 16,582 | $25.78 | $427,488.50 |

Alleged Missed, Short, Late, or Interrupted Meals

Plaintiff alleges Kerry required or permitted class members to work more than 5

consecutive hours without a meal break and failed to ensure that class members received meal

breaks and were fully relieved of all work duties during meal breaks. (Dkt. 1-2, p.8, ¶¶5.9-5.13.)

An average workday was between 8.86 hours per day, such that employees were therefore likely

entitled to one meal period per shift. With 96 workers for an average workweek, one meal period

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 11
(Case No. 2:25-cv-00965-TL)

Jackson Lewis P.C.
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

per shift, 5 shifts per week, and an average pay rate of $25.78 per hour, potential damages

associated with this are:

| Avg. # of EEs (WA) | # of Meals per EE (50 weeks x 5 shifts per week x 3 years) (2022–2024) | Total # of Meals (96 x 749) | Avg. $/hr | Damages per Meal ($25.78 x 0.5 hrs) | Total Meal Damages (71,904 x $12.89) |
|---|---|---|---|---|---|
| 96 | 749 | 71,904 | $25.78 | $12.89 | $926,842.56 |

Sick Pay Associated with Alleged Noncompliant Meals:

Plaintiff alleges Kerry failed to accrue sick leave for each missed meal period. (Dkt. 1-2,

p.10, ¶5.29.) Given the estimated number of meals denied, and sick leave accrual of 1 hour for

every 40 hours worked (or 40 hours of meals denied), potential damages associated with this are:

| Total # of Meals | # of Hours from Meals (71,904 x 0.5) | # of Sick Hours (1 hr / 40 hrs) | Avg. $/hr | Sick Pay Damages (898.8 x $25.78) |
|---|---|---|---|---|
| 71,904 | 35,952 | 898.8 | $25.78 | $23,171.06 |

Alleged Missed, Short, Late, or Interrupted Rest Breaks:

Plaintiff alleges Kerry failed to provide rest breaks for every four hours of work and

required or permitted class members to work more than three consecutive hours without a rest

break. (Dkt. 1-2, p.7, ¶¶5.2, 5.3.) An average workday was between 8.86 hours per day, such that

employees were therefore likely entitled to two rest breaks per shift. With 96 workers on an

average workweek, two rest breaks per shift, 5 shifts per week, and an average pay rate of $25.78

per hour, potential damages associated with this are:

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 12
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

| Avg. # of EEs (WA) | # of Rests per EE (50 weeks x 5 shifts per week x 2 breaks per shift x 3 years) (2022–2024) | Total # of Meals (96 x 1,498) | Avg. $/hr | Damages per Rest ($25.78 x 1/6 hrs) | Total Meal Damages (143,808 x $25.78 x 1/6 hrs) |
|---|---|---|---|---|---|
| 96 | 1,498 | 143,808 | $25.78 | $4.30 | $617,895.04 |

Sick Pay Associated with Alleged Noncompliant Rests:

Plaintiff alleges Kerry failed to accrue sick leave for each missed rest break. (Dkt. 1-2, p.10, ¶5.28.) Given the estimated number of rest breaks denied, and sick leave accrual of 1 hour for every 40 hours worked (or 40 hours of rest breaks denied), potential damages associated with this are:

| Total # of Rests | # of Hours of Rests (143,808 x 1/6) | # of Sick Hours (1 hr / 40 hrs) | Avg. $/hr | Sick Pay Damages (599.2 x $25.78) |
|---|---|---|---|---|
| 143,808 | 23,968 | 599.2 | $25.78 | $15,447.38 |

Overtime Premium Associated with Alleged Noncompliant Meals and Rests:

Plaintiff alleges Kerry failed to pay overtime wages during workweeks when denied rest breaks extended the workweek past 40 hours and when denied meal breaks extended the workweek beyond 40 hours. (Dkt. 1-2, p.9, ¶¶ 5.20, 5.21.) Notably, since the average hours worked per week is greater than 40 hours per week, all allegedly denied rest breaks or meal breaks would necessarily qualify as overtime. Because overtime is paid at a premium above a regular rate, and because the above categories already include potential damages for the denied breaks, potential damages for just the overtime premium associated with denied breaks are:

| Category | Amount | OT Premium (x .5) |
|---|---|---|
| **Meal Period Damages** | $926,842.56 | $463,421.28 |
| **Sick Pay Damages for Missed Meals** | $23,171.06 | $11,585.53 |
| **Rest Break Damages** | $617,895.04 | $308,947.52 |
| **Sick Pay Damages for Missed Rests** | $15,447.38 | $7,723.69 |
| **Total** | $1,583,356.04 | $791,678.02 |

Total Potential Damages Based on Allegations:

When these are added together, they result in the following total potential damages before accounting for doubling or tripling penalties and before adding attorney fees:

| | |
|---|---|
| **Overtime Premium for Alleged Hours Worked over 40 in a Workweek:** | $828,144.35 |
| **Alleged Failure to Accrue Sick Leave:** | $427,488.50 |
| **Alleged Noncompliant Meals:** | $926,842.56 |
| **Sick Pay Associated with Alleged Noncompliant Meals:** | $23,171.06 |
| **Alleged Noncompliant Rests:** | $617,895.04 |
| **Sick Pay Associated with Alleged Noncompliant Rests:** | $15,447.38 |
| **Overtime Premium on Alleged Noncompliant Meals, Rests, and Associated Sick Pay:** | $791,678.02 |
| **Total Potential Damages:** | $3,630,666.91 |

Accounting for Treble Damages for Seattle Employees, Double Damages for Others, and Fees:

Plaintiff alleges that all amounts associated with the above are subject to doubling as a penalty under RCW 49.52.070. (Dkt. 1-2, p.15, ¶11.4; p.17, ¶13.5.) Plaintiff alleges that all amounts associated with the above and associated with employees in Seattle are subject to tripling as a penalty under Seattle Municipal Code section 14.20.090. (Dkt. 1-2, p.18, ¶14.8.)

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 14
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Plaintiff also seeks an award of attorney fees. As described and supported in Kerry's Notice of Remand, courts routinely use 25% of potential damages as the measure for estimated attorney fees for purposes of determining the amount in controversy under CAFA. (Dkt. 1, pp.11-12, ¶¶34-36.) When the total damages above are trebled for the average number of employees in Seattle and doubled for all others, and when attorney fees of 25% are added, the following reflects the total amount in controversy:

| Category | Proportion of OT Damages | Multiplied Damages (3x for SEA, 2x for Other) | Plus Attorney's Fees (x 1.25) |
|---|---|---|---|
| SEA EEs (75 EEs, 75/96 proportion) | $2,836,458.52 | $8,509,375.57 | $12,764,063.36 |
| Other EEs (21 EEs, 21/96 proportion) | $794,208.39 | $1,588,416.77 | $2,382,625.16 |
| Total | $3,630,666.91 | $10,097,792.34 | $15,146,688.52 |

These calculations thus support a finding that the amount in controversy well exceeds $5,000,000, as required by CAFA. Removal was therefore appropriate. Plaintiff's Motion for Remand should be denied.

### D.    Even Under Reasonable Alternative Calculations, the Threshold Is Met.

Even under different reasonable alternative calculations, the threshold is still met. Kerry explains two example reasonable alternatives.

### 1.    Meal and Rest Breaks Only, 100% Violation Rate

Even if Plaintiff's claim was based solely on noncompliant meal and rest breaks and the overtime and failure to accrue sick leave based on them, the threshold is met. Based on a presumed 100% violation rate for meal breaks and rest breaks, Kerry satisfied the CAFA threshold of $5,000,000, as shown here:

| | |
|---|---|
| **Alleged Noncompliant Meals:** | $926,842.56 |
| **Sick Pay Associated with Alleged Noncompliant Meals:** | $23,171.06 |
| **Alleged Noncompliant Rests:** | $617,895.04 |
| **Sick Pay Associated with Alleged Noncompliant Rests:** | $15,447.38 |
| **Overtime Premium on Alleged Noncompliant Meals, Rests, and Associated Sick Pay:** | $791,678.02 |
| **Total Alleged Damages:** | $2,375,034.06 |
| **Tripling for 75 EEs / Doubling for 21 EEs:** | $6,605,563.48 |

Without accounting for Plaintiff's other claimed categories of damages, and without accounting for attorney fees, the threshold is met.

### 2.  60% Violation Rate for Meal and Rest Breaks, 30% Violation for Other Overtime and Sick Leave Violations

If something lower than 100% violation rates are used, the CAFA threshold is still met. For example, if a 60% violation rate for meal and rest breaks and the overtime and failure to accrue sick leave based on them, once tripling and doubling are alleged, the potential damages are 60% of the total in the calculation from the previous section: $6,506,603.73 x 60% = $3,903,962.24. As explained above, the total potential damages based on Plaintiff's allegations of overtime premiums not being paid on hours worked over 40 in a workweek are $828,144.35. Likewise, the total potential damages based on Plaintiff's allegations of failure to accrue sick leave are $427,488.50. If those are combined and subjected to a 30% violation rate, the result is $376,689.86. When that is tripled for 75 employees and doubled for 21 employees, the result is $1,047,668.66. When these are combined, the result is $3,903,962.24 + $1,047,668.66 = $4,951,630.90. That is before any portion of attorney fees is added. Certainly Plaintiff (or Plaintiff's counsel) agrees that more than $65,000 will be incurred in attorney fees in pursuing this case through trial. Thus, under these assumptions, and assuming even minimal attorney fees, the threshold is met.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 16
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

**E.** **Plaintiff relies on cases not involving similar potential claims or damages.**

Plaintiff offers this Court a plethora of case law authority, but none of those cases persuasively support remand of this case. For example, Plaintiff asserts that this case is "identical" to action *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092 - LJO - JLT, 2013 U.S. Dist. LEXIS 132930 (E.D. Cal. Sep. 16, 2013), *Ray v. Nordstrom Inc.*, No. 2:11-cv-07277-JHN-CWx, 2011 U.S. Dist. LEXIS 146657 (C.D. Cal. Dec. 9, 2011), *Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 U.S. Dist. LEXIS 88812 (N.D. Cal. Aug. 4, 2010), and *Rinsch v. ServiceLink NLS, LLC*, No. CV 22-5989-GW-ASx, 2022 U.S. Dist. LEXIS 227343 (C.D. Cal. Dec. 16, 2022), and distinguishable from *Terrell v. Samuel, Son & Co. (USA)*, No. EDCV20-00587-JGB-(KKx), 2020 U.S. Dist. LEXIS 94425 (C.D. Cal. May 29, 2020).

*Weston*, *Ray*, *Ruby*, and *Rinsch* concerned alleged violations of various California labor codes, which certainly are not "identical" to violations of Washington meal and rest break requirements. As discussed above, a meal period or rest break that is short by one minute or that starts one minute too late might not fully comply with Washington law. Whether this is also true under California labor codes is unclear, and the cases Plaintiff relies on use broader language such as "missed" breaks as opposed to breaks that were given but were just either slightly too short or began slightly too late. The cases Plaintiff relies on that do not account for that difference are not helpful to this analysis.

**F.** **Plaintiff's Argument on Attorney Fees Incorrectly States the Law**

Finally, Plaintiff argues that attorney fees cannot be included because doing so is too speculative. Plaintiff's argument ignores that Kerry may rely on reasonable assumptions in addition to declarations to meet its burden at this stage. Moreover, Plaintiff's argument ignores scores of decisions holding that it is reasonable to estimate attorney fees at 25 percent of a plaintiff's potential recovery. Dkt. 1, pp.11-12, ¶¶34-36 and cases cited therein.

### IV.    CONCLUSION

Kerry has justified its removal of this case under CAFA, and Plaintiff has failed to present cogent (or any) evidence to the contrary. Plaintiff misconstrues Kerry's burden to

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1  establish jurisdiction under CAFA. Kerry has the amount in controversy exceeds the $5,000,000

2  jurisdictional threshold, based on the allegations in Plaintiff's Complaint and the evidence

3  submitted in support of the Notice of Removal and this opposition. Therefore, this Court should

4  deny Plaintiff's Motion for Remand and retain jurisdiction of this matter under CAFA.

5      DATED this 11th day of July, 2025.

6      *I certify that this memorandum contains 5,611 words, in compliance with the Local Civil*

7  *Rules.*

8                      JACKSON LEWIS P.C.

9

10                     By:    *s/ Brian K. Keeley*
                              Brian K. Keeley, WSBA #32121
11                            Peter V. Montine, WSBA #49815
                              520 Pike Street, Suite 2300
12                            Seattle, WA 98101
                              Telephone (206) 405-0404
13                            Brian.Keeley@jacksonlewis.com
                              Peter.Montine@jacksonlewis.com
14

15

16                            Counsel for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 18
(Case No. 2:25-cv-00965-TL)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the United States of America that a true and accurate copy of the document to which this declaration is affixed was electronically filed with the Clerk of the Court using the CM/ECF System, and sent to the following:

Douglas Han, WSBA #59429
Shunt Tatavos-Gharajeh, WSBA #59424
Dean Petitta, WSBA #58295
Justice Law Corporation
751 North Fair Oaks Avenue, Suite 101
Pasadena, CA 91103
Telephone (818) 230-7502
dhan@justicelawcorp.com
statavos@justicelawcorp.com
dpetitta@justicelawcorp.com

☒ via CM/ECF System
☒ via Electronic Mail
☐ via USPS Mail
☐ via Federal Express
☐ via Hand-delivery
☐ Other: _____

Counsel for Plaintiff

*With courtesy copies to*:
Sophia Hanneyan – shanneyan@justicelawcorp.com
Flor Gonzalez – fgonzalez@justicelawcorp.com

DATED this 11th day of July, 2025.

_____
Lindsay Holzworth

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND - 19
(Case No. 2:25-cv-00965-TL)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404