THE HONORABLE TANA LIN

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYRONE WASHINGTON, individually and on behalf of all those similarly situated,<br><br>　　Plaintiff,<br><br>　　v.<br><br>KERRY INC., a Delaware corporation;<br><br>　　Defendant. | Case No.: 2:25-cv-00965-TL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR:<br>July 21, 2025 |

PLAINIFF'S REPLY, PAGE 1
CASE NO 2:25-cv-00965-TL

**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

# TABLE OF CONTENTS

1. INTRODUCTION AND STANDARD ................................................................................... 5
2. ARGUMENT ........................................................................................................................ 5
   A. Reasonable or plausible allegations ............................................................................... 5
      a. A 100% violation rate is not reasonable ................................................................. 6
      b. The Court Should Apply Reasonable Assumptions ............................................... 7
   B. Defendant's assumptions are significantly flawed ........................................................ 8
      a. Defendant's purported evidence has problems ....................................................... 8
      b. The calculations are based on deeply flawed assumptions ..................................... 8
         i. The violation rate ................................................................................................ 9
         ii. The 52-week allegation ..................................................................................... 10
         iii. Plaintiff is not attempting to recover overtime already paid .......................... 11
         iv. Plaintiff is not attempting to recover accrued sick leave already provided ..... 11
         v. Damages for missed, short, late, or interrupted meals ..................................... 12
         vi. Sick leave accrual due to noncompliant meals ................................................ 12
         vii. Damages for missed, short, late, or interrupted rest breaks ........................... 13
         viii. Sick leave accrual associated with alleged noncompliant rest breaks .......... 13
         ix. Overtime premium associated with alleged noncompliant meal and rest breaks. 13
         x. Summary of total damages for missed meal and rest breaks ............................ 14
         xi. Total damages .................................................................................................. 15
3. CONCLUSION ................................................................................................................... 16

PLAINIFF'S REPLY, PAGE 2
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alvarez v. Off. Depot, Inc.,*
    (C.D. Cal. Nov. 30, 2017) 2017 U.S. Dist. LEXIS 197358 .......................................... 6, 7

*Brown v. Janus of Santa Cruz,*
    2021 U.S Dist. LEXIS 147197 (N.D. Cal. August 5, 2021) ............................................. 6

*Coleman v. Estes Express Lines, Inc.,*
    730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ............................................................... 6, 7

*Dart Cherokee Basin Operating Co., v. Owens,*
    (2013) 574 U.S. 81 ................................................................................................................ 5

*Deaver v. BBVA Compass Consulting & Benefits, Inc.,*
    (N.D. Cal. May 27, 2014) U.S. Dist. LEXIS 72074 at *17 ............................................. 10

*Dobbs v. Wood Grp. PSN, Inc.,*
    (E.D. Cal. 2016) 201 F. Supp. 3d 1184 ............................................................................... 6

*Evans v. Walter Indus., Inc.,*
    (11th Cir. 2006) 449 F.3d 1159 ........................................................................................... 8

*Garcia v. Wal-Mart Stores,*
    2207 F. Supp. 3d 1114 (C.D. Cal. 2016) ............................................................................. 6

*Ibarra v. Manheim Invs., Inc.,*
    775 F.3d 1193 (9th Cir. 2015) .......................................................................................... 6, 7

*Jauregui v. Roadrunner Transp. Servs., Inc.,*
    (9th Cir. 2022) 28 F.4th 989, 996 ............................................................................. 7, 10, 15

*Johnson v. Bamia 2 LLC,*
    (E.D. Cal. July 22, 2022) 2022 U.S. Dist. LEXIS 131065 ........................................... 7, 10

*LaCross v. Knight Transp. Inc.,*
    (9th Cir. 2015) 775 F.3d 1200 .............................................................................................. 7

/ / /

PLAINIFF'S REPLY, PAGE 3
CASE NO 2:25-cv-00965-TL

**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California  91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

| Cases | Page(s) |
|---|---|
| *Moore v. Dnata US Inflight Catering, LLC,* (N.D. Cal. July 19, 2021) 2021 Dist. Lexis 134216 at *2 | 6 |
| *Ramirez v. HV Global Mgmt. Corp.,* (N.D. Cal. April 25, 2022) 2022 U.S. Dist. LEXIS 74811 at *11 | 6 |
| *Rodriguez v. AT&T Mobility Servs. LLC,* (9th Cir. 2013) 728 F.3d 975 | 5 |
| *Trigueros v. Stanford Fed. Credit Union,* (N.D. Cal. Jun. 28, 2021) 2021 U.S. Dist. LEXIS 120271 | 6 |
| *Vasserman v. Henry Mayo Newhall Mem. Hosp.,* (C.D. Cal. 2014) 65 F. Supp. 3d 932, 983 | 8 |
| *Young v. Lab's Corp. of Am.,* (W.D. Wash. Feb. 20, 2024) 2024 U.S. Dist. LEXIS 28879, at *4 | 5, 6, 7, 10 |

| Statutes | Page(s) |
|---|---|
| Class Action Fairness Act | 5, 16 |
| 28 U.S.C. § 1332 | 5 |
| 28 U.S.C. §1446(c)(2)(B) | 5 |
| U.S. Constitution ArtIII.S2.C1.1 | 5 |

PLAINIFF'S REPLY, PAGE 4
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

**MEMORANDUM**

1. **Introduction and Standard**

Defendant Kerry Inc., ("Defendant") chose to invoke the limited jurisdiction of the federal courts by filing a notice of removal. *See* U.S. Const. art. III, § 2, cl. 1. It has long been established in the Ninth Circuit "[t]he party seeking the federal forum [in Class Action Fairness Act cases still] bears the burden of establishing the statutory requirements of federal jurisdiction have been met." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). At issue in this case is whether Defendant established by a preponderance of the evidence the jurisdictional amount in controversy of $5,000,000.00 required under the Class Action Fairness Act ("CAFA.") 28 U.S.C. §1332. *Dart Cherokee Basin Operating Co., v. Owens, 574 U.S. 81,* 88-89 (2014).

Defendant's Opposition ("Opposition") to Plaintiff's Motion to Remand ("Motion") does little to remedy the flaws in its calculation methodology. Without establishing the amount in controversy, this Court lacks subject matter jurisdiction.

2. **Argument**

A. Reasonable or plausible allegations

Defendant devotes nearly three pages of its Opposition arguing that it does not need to provide anything more than reasonable assumptions, despite Plaintiff having asserted this exact point in his Motion. Indeed, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., v. Owens, 574 U.S. 81,* 89 (2014) (citing 28 U.S.C. § 1446(c)(2)(B). "When a plaintiff contests a defendant's assertion of the amount in controversy, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied. *Id.* at 88-89 (citing 28 U.S.C. § 1446(c)(2)(B)). *Young v. Lab's Corp. of Am.*, 2024 U.S. Dist. LEXIS 28879, at *4 (W.D. Wash. Feb. 20, 2024). Plaintiff contends that Defendant's assumptions are not only unreasonably, but absurd.

PLAINIFF'S REPLY, PAGE 5
CASE NO 2:25-cv-00965-TL

**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

a). A 100% violation rate is not reasonable

"[A] 100% violation rate might be appropriate if Plaintiff's complaint alleged universal deprivation of rest breaks, meal breaks, or overtime payments. . ." *Id.*, at *4. Where plaintiff's complaint lacks such an allegation and "[e]ven in cases where the complaint alleges a defendant engaged in a '**common course of conduct**'" a reasonable estimate must be made. *Id.*, at *4 (quoting Moore v. Dnata US Inflight Catering, LLC, 2021 Dist. Lexis 134216 at *2 (N.D. Cal. July 19, 2021) (emphasis added). "District courts have found [violation] rates ranging from 20% to 60% to be more appropriate" for allegations of a 'pattern and practice'. *Ramirez v. HV Global Mgmt. Corp.*, 2022 U.S. Dist. LEXIS 74811 at *11 (N.D. Cal. April 25, 2022) (emphasis added) (citing *Alvarez v. Off. Depot, Inc.*, 2017 U.S. Dist. LEXIS 197358 (C.D. Cal. Nov. 30, 2017) (60% violation rate); Brown, 2021 U.S. Dist. LEXIS 147197 (25% violation rate); *Trigueros v. Stanford Fed. Credit Union*, 2021 U.S. Dist. LEXIS 120271 (N.D. Cal. Jun. 28, 2021) (20% violation rate).

*Young v. Laboratory of Corporation of America,* is instructive as it does state specifically that "[e]ven if Plaintiff's complaint alleged a 'pattern and practice' of labor law violations . . . this would not necessarily imply that Defendants always violated the law." *Id.* (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). The Court relied on Plaintiff's allegations that violations occurred "at times" to assume a 20% violation rate. *Id.* at *11-12. Courts in this Circuit have reviewed language similar to Plaintiff's allegation, that the violations were a "common course" and in few cases was a 100% violation rate applied. *See Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184 (E.D. Cal. 2016) and *Garcia v. Wal-Mart Stores*, 2207 F. Supp. 3d 1114 (C.D. Cal. 2016).

Defendant cited to the few cases that applied a 100% rate, and they are all significantly factually different from this case. For example, in both *Coleman v. Estes Express Lines, Inc.*, and *Alvarez v. Ltd., Express, LLC*, the Complaint contained allegations that it was "virtually impossible" for the employees to take breaks based on the nature of the work. *Coleman*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010); Alvarez, 2007 U.S. Dist. LEXIS 58148 (S.D. Cal. Aug. 8,

PLAINTIFF'S REPLY, PAGE 6
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

1  2007). More importantly, the cases cited above came before the Ninth Circuit Court of Appeals opinion in *Ibarra*, where the Court rejected the assertion that a 100% violation rate was reasonable, even with allegations of a "pattern and practice" of violations. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

In this case, Plaintiff alleged that not all employees missed breaks, and that it was a "common course" that Defendant violated the law, but not a "complete deprivation." See *Young*, 2024 U.S. Dist. LEXIS 28879 at *4. In this case, Plaintiff alleged that Defendant had a common course of conduct that prevented employees from taking meal and rest breaks in violation of the law. *See* generally, Complaint, ECF No. 1-2. In his Complaint, he stated specifically that this did not apply to all employees. Complaint, ECF No. 1-2, Paragraphs 6.10, 7.10, 8.4, 9.4, 10.5, 11.6, 13.5, 14.8. To apply a 100% violation rate would be in conflict with holdings in the 9th Circuit, and completely incongruous with both Plaintiff's factual allegations and Defendant's purported evidence.

        b)    <u>The Court should apply reasonable assumptions</u>

Particularly at issue in this case is the factual assumptions upon which the amount in controversy is based. As stated above, and thoroughly briefed in Plaintiff's Motion, assumptions must rely on a "reasonable chain of logic." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015) (citing *Ibarra,* 775 F3d 1193 (9th Cir. 2015).

It is well established that the Court can and should apply its own assumptions in determining the amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("When the district court identifies a different better assumption concerning the amount in controversy to the one advanced by the removing defendant, the court 'should consider the claim under the better assumption.'"). *Young*, 22024 U.S. Dist. LEXIS 28879 at *12 (citing See also *Johnson v. Bamia 2 LLC*, 2022 U.S. Dist. LEXIS 131065 (E.D. Cal. July 22, 2022).

/ / /

/ / /

PLAINIFF'S REPLY, PAGE 7
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California  91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

B. <u>Defendant's assumptions are significantly flawed</u>

    a)    <u>Defendant's purported evidence has problems</u>

For the purposes of this Motion, Plaintiff is not challenging the content of Defendants purported evidence. Rather, Plaintiff wishes for the Court to infer that Defendants chose to provide this particular information because they would not otherwise have met the jurisdictional amount. Courts consider which party has better "access to or control over the records and information required to determine whether the amount in controversy is met." *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F. Supp. 3d 932, 983 (C.D. Cal. 2014). Defendant cannot reasonably contest that it is in the best position to provide evidence pertaining to the amount in controversy. *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("Defendants have better access to information about conduct by defendants.").

Defendant could have simply provided how many employees are needed to operate the facility by shift or day—as it staffs its own facilities this information should have been on hand. For example, if Defendant's Seattle location can only reasonably support sixty hourly-paid employees per day, that would be a far more instructive number than an average of how many employees may be on the payroll, whether they worked or not, during any given week.

Again, Plaintiff is not challenging Defendant's purported "evidence" but is arguing that it does not support a calculation upon which the Court can reasonably rely, as briefed thoroughly in his Motion, and not re-briefed here. In suggesting alternate calculations for the purposes of this Memorandum, it uses Defendant's flawed information to demonstrate that it did not meet its burden. In doing so, he makes no concessions nor agrees with Defendant's purported facts, assumptions, or reasoning.

    b)    <u>The calculations are based on deeply flawed assumptions</u>

The crux of the issue is Defendant makes unreasonable assumptions in its calculation of the Amount in Controversy. Plaintiff briefed the issues with Defendant's Removal thoroughly in its Motion, but to avoid any further misunderstandings, Plaintiff provides the following list of some of Defendant's assumptions that are absurd:

PLAINIFF'S REPLY, PAGE 8
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

1        •    All employees missed every rest break (20 minutes per day)

2        •    All employees missed every meal break (30 minutes per day)

3        •    All employees worked every holiday

4        •    Not a single employee took sick time

5        •    Not a single employee took vacation leave

6        •    That all breaks missed are overtime hours

7        •    That all Seattle employees will be owed treble damages under the law

Plaintiff has alleged no specific rate at which Defendant violated the rest and meal break laws, as he does not have the documentary evidence to accurately do at this early stage of litigation, and instead alleged what he can: a **common course** of conduct. Regardless, it is Defendant's burden to establish the amount in controversy is reasonable and supported by evidence. Defendant failed to do so.

       i.    <u>The violation rate</u>

In support of its allegations, Defendant provided a one-month snapshot of Plaintiff's punches. Exhibit 1, ECF No. 15-1. This record demonstrates that Plaintiff did not miss every lunch. In fact, Plaintiff only missed 27% of his lunches, which is conceded by Defendant. See Opposition, Page 8 ("Plaintiff worked 26 shifts during the month of March 2024. Plaintiff did not clock in for a meal period for 7 of those shifts. . .") As Defendant aptly notes, there are meal breaks that are shorter than the required thirty minutes, and should those be included, that could result in a violation rate of 57%. See Opposition, Page 8 ("Plaintiff was clocked out for less than 30 minutes for 8 [meal breaks recorded]." Assuming this snapshot is typical—and Plaintiff does not concede that it is—then the **common course** would be 27%, and at most a 57% violation rate.

Defendant is correct that rest breaks are not on the record provided. This could be reflective of a 100% violation rate; however, Plaintiff did not allege that he or his coworkers missed every break, but only that the violations were a "common course" of conduct. With the limited evidence provided by Defendant, and without conceding it is factually accurate, it is

PLAINIFF'S REPLY, PAGE 9
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

reasonable to assume that the common course that Plaintiff alleges is a 27%, or at most a 57% violation rate.

  ii. <u>The 52-week allegation</u>

  Defendant's calculation assumes that all employees worked more than 40 hours per week for all 52 weeks in a year. This assumption is "belied by common sense." *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, U.S. Dist. LEXIS 72074 at *17 (N.D. Cal. May 27, 2014) ("Defendants' calculation assumes every class member worked every week of their employment—an assumption belied by common sense."). Assuming Defendant provides paid sick and safe time in accordance with the law, paid holidays, and vacation, it is more likely that employees worked a maximum of 48 weeks, and even more likely 46-47 weeks[1]. And again, due to intermittent time off for holidays, sick and safe time, vacation days, or employees using other protected leave, it is likely that employees occasionally worked fewer than forty hours in a week.

  Plaintiff asks this Court to identify or adopt more reasonable assumptions. *Young*, 22024 U.S. Dist. LEXIS 28879 at *12 (citing *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("When the district court identifies a different better assumption concerning the amount in controversy to the one advanced by the removing defendant, the court 'should consider the claim under the better assumption.'"). *See also Johnson v. Bamia 2 LLC*, 2022 U.S. Dist. LEXIS 131065 (E.D. Cal. July 22, 2022); *and Deaver*, 2014 U.S. Dist. LEXIS 72074 (N.D. Cal. 2014).

  Specifically, Plaintiff believes that the Court should use the evidence provided by Defendant that demonstrates a 27% violation rate. Plaintiff also requests that this Court use the reasonable assumption that employees worked no more than 48 full weeks in a year. This number was reached based on the assumption that Defendant offers paid holidays, vacation, and approximately 9 days of sick time legally required under the law, based on Defendant's evidence that employees worked an average of 8.86 hours per day.

---

[1]  Even assuming the unlikely scenario that Defendant only offers five holidays nine sick days a year, and no vacation or personal days, that is nearly three weeks off.

PLAINIFF'S REPLY, PAGE 10
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

    iii.    <u>Plaintiff is not attempting to recover overtime already paid</u>

Plaintiff did not believe that his Complaint was unclear on this point; however, Plaintiff will concede that any hours over 40 that were actually recorded by Defendant and paid to employees were *likely* paid at an overtime rate. Plaintiff is not conceding that Defendant *properly calculated* the overtime rate. For the purposes of Defendant's calculation only, Plaintiff is conceding that the 4.29 hours each week were paid at an overtime rate. Defendant likely knows that this should not be included in the total calculation, because it provides a total that does not include this violation at all in its Opposition. Opposition, Page 15 (Section titled *Meal and Rest Breaks Only*). This calculation is flawed regardless, as Defendant used at 52-week year. This is simply an inflation.

|  | Avg. # of EE's WA | Avg. Hours over 40 per Workweek | Total hours over 40 per workweek | Avg. $/hr | Total overtime |
|---|---|---|---|---|---|
| Def. | 96 | 4.29 | 64,247.04 | $25.78 | $828,144.35 |
| Pl. | 96 | 0 unpaid hours | 0 | $25.78 | $0.00 |

    iv.    <u>Plaintiff is not attempting to recover accrued sick leave already provided</u>

Plaintiff knows that the Complaint was clear on this point. Plaintiff specifically alleged that sick leave did not accrue for **missed breaks**. Complaint, ECF No. 1-2 Paragraphs 5.28 and 5.29. Plaintiff did not allege that Defendant failed to provide accrual for time actually recorded and paid. As such, Defendant's calculation is simply inflation. Defendant likely knows this is the case, because it provides a total that does not include this violation at all in its Opposition. Opposition, Page 15 (Section titled *Meal and Rest Breaks Only*). This calculation is flawed regardless, as Defendant used at 52-week year. This is simply an inflation.

|  | *Avg. # of EEs (WA)* | *Avg. Hours Per Workweek (2022–2024)* | *# of Sick Leave Hours (96 x 44.29 hours x 52 Weeks x 3 Years x 1 hour sick for 40 worked)* | *Avg. $/hr* | *Total Sick Leave (64,247 hours x 25.79/hr)* |
|---|---|---|---|---|---|
| Def. | *96* | *44.29* | *16,582* | *$25.78* | *$427,488.50* |
| Pl. | *96* | *0 unaccrued* | *0* | *$25.78* | *$0.00* |

PLAINIFF'S REPLY, PAGE 11
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California  91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

v.   Damages for missed, short, late, or interrupted meals

Defendant's calculation is fatally flawed for two reasons: (1) Defendant applies a 100% violation rate; and (2) Defendant uses 50 weeks a year as a bases for its calculation. The evidence provided by Defendant demonstrates a 27% violation rate, not a 100% violation rate. It is far more reasonable to apply a 48-week average. Applying more reasonable numbers (27% violation rate and 48-week year) to Defendant's calculation method results in more reasonable number. Again, Plaintiff does not concede that these are appropriate calculations but seeks to demonstrate that Defendant has not met its burden. As seen below, Defendant's numbers are inflated.

|  | Avg. # of EEs | # of meals per EE (48 weeks x 5 shifts per week x 3 years | Total # of Meals | Avg. $/hr | Damages per meal ($25.78 x .5 hrs) | Total meal damages |
|---|---|---|---|---|---|---|
| Def. | 96 | 749 | 71,904 | $25.78 | $12.89 | $926,842.56 |
| 27% | 96 | 194 | 18,624 | $25.78 | $12.89 | $240,063.36 |
| 57% | 96 | 410 | 39,360 | $25.78 | $12.89 | $507,350.40 |

vi.   Sick leave accrual due to noncompliant meals

Defendant's calculation is fatally flawed because it relies on the flawed numbers calculated for missed meal breaks, including a 50-week year and a 100% violation rate. Applying more reasonable numbers (27% violation rate and 48-week year) to Defendant's calculation method results in a much more reasonable number. Again, Plaintiff does not concede that these are appropriate calculations but seeks to demonstrate that Defendant has not met its burden. As seen below, Defendant's numbers are inflated.

|  | Total # of Meals | # of Hours from Meals (.5 hours) | # of Sick Hours (1 hr / 40 hrs) | Avg. $/hr | Sick Pay Damages |
|---|---|---|---|---|---|
| Def. | 71,904 | 35,952 | 898.8 | $25.78 | $23,171.06 |
| 27% | 18,624 | 9,312 | 232.8 | $25.78 | $6,001.58 |
| 57% | 39,360 | 19,680 | 492 | $25.78 | $12,683.76 |

PLAINIFF'S REPLY, PAGE 12
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

vii. <u>Damages for missed, short, late, or interrupted rest breaks</u>

Defendant's calculation is fatally flawed because: (1) Defendant applies a 100% violation rate; and (2) Defendant uses 50 weeks. The evidence provided by Defendant demonstrated a 27% violation rate, not a 100% violation rate. It is far more reasonable to apply a 48-week average. Applying more reasonable numbers (27% violation rate and 48-week year) to Defendant's calculation method results in a more reasonable number. Again, Plaintiff does not concede that these are appropriate calculations but seeks to demonstrate that Defendant has not met its burden. As seen below, Defendant's numbers are inflated.

| | *Avg. # of EEs* | *2 rest breaks per EE (48 weeks x 5 shifts per week x 3 years* | *Total # of rest breaks* | *Avg. $/hr* | *Damages per rest break (1/6 hrs)* | *Total rest damages* |
|---|---|---|---|---|---|---|
| *Def.* | 96 | 1,498 | 143,808 | $25.78 | $4.30 | $617,895.04 |
| 27% | 96 | 389 | 37,344 | $25.78 | $4.30 | $160,454.72 |
| 57% | 96 | 821 | 78,816 | $25.78 | $4.30 | $338,646.08 |

viii. <u>Sick leave accrual associated with alleged noncompliant rest breaks</u>

Defendant's calculation is fatally flawed because it relies on the flawed numbers calculated for missed meal breaks, including a 50-week year and a 100% violation rate. Applying more reasonable numbers (27% violation rate and 48-week year) to Defendant's calculation method results in the latter number. Again, Plaintiff does not concede that these are appropriate calculations but seeks to demonstrate that Defendant has not met its burden. As seen below, Defendant's numbers are inflated.

| | *Total # of Rest Breaks* | *# of Hours of rest breaks (1/6 hours)* | *# of Sick Hours (1 hr / 40 hrs)* | *Avg. $/hr* | *Sick Pay Damages* |
|---|---|---|---|---|---|
| *Def.* | 1,498 | 23,968 | 599.2 | $25.78 | $23,171.06 |
| 27% | 389 | 6,224 | 155.6 | $25.78 | $4,011.37 |
| 57% | 821 | 13,136 | 328.4 | $25.78 | $8,466.15 |

ix. <u>Overtime premium associated with alleged noncompliant meal and rest breaks</u>

Plaintiff is not aware of any authority that allows sick time to be accrued at a faster rate than the number of hours worked (or purported hours worked). While hours or purported hours

PLAINIFF'S REPLY, PAGE 13
CASE NO 2:25-cv-00965-TL

**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

worked may be subject to *overtime premiums*, there is no similar mechanic to add a premium to sick time accrual. The Washington Labor and Industries guidance on sick time accrual and rate of pay supports this position. See Washington Labor and Employment website ("For example: "an employee . . . who works 60 hours a week will earn 3 hours of paid sick leave every two weeks.")[2] As such, no overtime premiums should be added to accrual.

x.  Summary of total damages for missed meal and rest breaks

This chart pulls the previous section's numbers and applies an overtime premium where appropriate. In its calculations, Defendant unreasonably assumes that all violations occurred during weeks that overtime occurred. This is yet another unreasonable assumption. However, even with this unreasonable assumption, Defendant does not prevail.

|      | Category | Amount | Additional OT premium (.5) |
|------|----------|--------|----------------------------|
| Def. | Meal period damages | *$926,842.56* | *$463,421.28* |
| 27%  |          | $240,063.36 | $108.025.51 |
| 57%  |          | $507,350.40 | $253,675.20 |
|      |          |        |        |
| Def  | Sick pay for missed meals | *$23,171.06* | *$11,585.53* |
| 27%  |          | $6,001.58 | $0 |
| 57%  |          | $12,683.76 | $0 |
|      |          |        |        |
| Def  | Rest break damages | *$617,895.04* | *$308,947.52* |
| 27%  |          | $160,368.79 | $72,165.96 |
| 57%  |          | $338,646.08 | $169,323.04 |
|      |          |        |        |
| Def  | Sick pay for missed meals | *$15,447.38* | *$7,723.69* |
| 27%  |          | $4,011.37 | $0 |
| 57%  |          | $8,466.15 | $0 |
|      |          |        |        |
|      | *Total - Defendant* | *$1,583,356.04* | *$791,678.02* |
|      | Total – 27% | **$410,445.10** | **$180,194.47** |
|      | Total – 57% | **$867,146.39** | **$422,998.24** |

---

[2] https://www.lni.wa.gov/workers-rights/leave/paid-sick-leave/paid-sick-leave-minimum-requirements#rate-of-pay

PLAINIFF'S REPLY, PAGE 14
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California  91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

xi.    Total damages

The calculation below includes treble and double damages consistent with Defendant's method of calculation. Plaintiff does not concede that all class members in Seattle would be subject to treble damages, nor that this assumption is reasonable. Even with the inflated methodology, Defendant still does not meet the threshold.

Before doubling and trebling and adding attorney's fees, the total damages asserted by Defendant, and using more reasonable numbers using Defendant's methodology is as follows:

```
Defendant:              $3,630,666.91
27% and 48 weeks:       $  590,639.57
57% and 48 weeks:       $1,290,144.63
```

After applying double damages to 21/96ths of the totals, and trebling damages for the remainder, the totals are as follow:

```
Defendant:              $10,097,792.34
27% and 48 weeks        $1,642.716.49
57% and 48 weeks        $3,588,214.75
```

Should this Court choose to add a 25% attorney's fee to the totals above, as suggested by the Defendants, the result is **$2,053,395.38** for the 27% rate and **$3,588,214.75** for the 57% rate. In applying the approach of adopting reasonable assumptions as set forth in *Jauregui*, 28 F.4th at 996, or otherwise finding Defendant's calculations unreasonable, Defendant falls significantly short of its burden.

As noted above, Courts regularly find violation rates of 20% to 60% reasonable, but 60% does not reach five million dollars. Even in its alternative calculation that includes a 60% violation rate, Defendant included the overtime premiums already paid and sick time already accrued in order to inflate the numbers.

/ / /

/ / /

/ / /

PLAINIFF'S REPLY, PAGE 15
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

### 3. Conclusion

Defendant cannot demonstrate by a preponderance of the evidence that the amount in controversy for purposes of CAFA is five million dollars. Accordingly, this Court does not have jurisdiction, and this case must be remanded back to the King County Superior Court.

I certify that this Memorandum contains 3,564 words, in compliance with the Local Civil Rules.

DATED: July 18, 2025                               **JUSTICE LAW CORPORATION**

By: */s/ Dean Petitta*
Douglas Han, WSBA #59429
Email: dhan@justicelawcorp.com
Shunt Tatavos-Gharajeh, WSBA #59424
Email: statavos@justicelawcorp.com
Dean Petitta, WSBA #58295
Email: dpetitta@justicelawcorp.com
751 North Fair Oaks Avenue, Suite 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for Plaintiff*

PLAINIFF'S REPLY, PAGE 16
CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.JusticeLawCorp.com

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that, on the date stated below, I did the following:

On July 18, 2025, I transmitted a true copy of:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**

in the above-entitled matter to:

| | |
|---|---|
| Peter V. Montine, WSBA #49815<br>Peter.Montine@jacksonlewis.com<br>Brian K. Keeley, WSBA #32121<br>Brian.Keeley@jacksonlewis.com<br>**Legal Staff:**<br>Ross Merritt<br>Ross.Merritt@jacksonlewis.com<br>Lindsay Holzworth<br>Lindsay.Holzworth@jacksonlewis.com<br>Sage Emerson<br>Sage.Emerson@jacksonlewis.com<br>SeattleDocket@jacksonlewis.com<br>**JACKSON LEWIS P.C.**<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | [X] By ECF<br>[X] By Electronic Mail |

*Attorney(s)* for Defendant *Kerry Inc.*

Executed on July 18, 2025, at Pasadena, California.

/s/ *Sophia Hanneyan*
Sophia Hanneyan

CASE NO 2:25-cv-00965-TL

JUSTICE LAW CORPORATION
751 N. Fair Oaks Ave., Suite 101
Pasadena, California 91103
TEL. (818) 230-7502 • FAX (818) 230-7259
www.justicelawcorp.com